230 N.J. Super. 86 (1989)
552 A.2d 661
IN THE MATTER OF APPLICATION OF VV PUBLISHING CORPORATION.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1988.
Decided January 19, 1989.
*87 Before Judges SHEBELL, GRUCCIO and LANDAU.
Laura R. Handman, argued the cause for appellant, pro hac vice, (Gordon, Gordon & Haley, New Jersey counsel, and Lankenau, Kovner & Bickford, New York counsel, attorneys; Timothy S. Haley, Laura R. Handman and Pamela M. Parker on the brief).
John J. Kapp of D'Alessandra, Sussman & Jacovino (John J. Kapp, on the brief); Mary Adele Hornish of Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski (Mary Adele Hornish, on the brief), and Arthur Miltz of Miltz and Mantel; argued the cause for minor respondents.
Lordi & Tafro, attorneys (Joseph Tafro, Jr., on the brief) and Manna & Kreizman, attorneys (Jay Lowell Juckett, on the brief) filed briefs for minor respondents.
The opinion of the court was delivered by GRUCCIO, J.A.D.
*88 VV Publishing Corporation (Village Voice) appeals a decision of the Law Division, Essex County, denying its application to unseal the transcripts of the State v. Michaels trial. On appeal, Village Voice argues that the sealing order unconstitutionally bars its right of access to the transcripts of an open trial. Although the State and seven other respondents[1] failed to file a responsive brief within the allotted time period, the guardians of six minor victims contend that the transcripts should remain sealed to protect their rights to privacy.
The facts are as follows: In April 1988, Margaret Michaels was convicted of 115 counts of sexual abuse of many three- to five-year-old children who were in her care and custody at the Wee Care Day Nursery. The trial judge recognized the need to protect the physical and emotional welfare of the children as well as the First Amendment right of the media to attend open criminal trials. Hence, he allowed the pretrial proceedings and the trial itself to be essentially open to the public. However, prior to any testimony in open court and on the record, the trial judge ordered that all media refrain from publishing any information concerning the identities, addresses or occupations of any of the victims and their families. He also ordered that all transcripts be sealed.
Village Voice, which elected not to attend the trial, subsequently filed an application to unseal the transcripts. It contends that the verbatim transcripts constitute the only absolutely accurate and reliable source of information and are thus essential for it to prepare a thorough article. The trial court denied the application and rejected as impractical an alternative result suggested by the State and some of the parents that the *89 transcripts be unsealed but redacted to protect the names, addresses, initials and all other identifying characteristics of the children and their families.
The trial judge's approach was essentially correct when he endorsed the principles underlying the decisions of the United States Supreme Court and the New Jersey courts which hold that the press' constitutional guaranteed right of access to criminal proceedings is essential to the public's ability to understand and effectively scrutinize the operations of government, and that right of access may not be restricted absent demonstration of a compelling interest. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); State v. Allen, 73 N.J. 132 (1977). However, the trial judge concluded that access to the transcripts should be prohibited even though the proceedings themselves had been conditionally open. Hence, he ruled that the continued sealing of the transcripts was necessary to protect privacy rights of the families and the children who testified or who were mentioned in open court, and that those privacy interests necessarily outweighed the interest of the press and the public in access to the transcripts.
We are faced with the compelling but conflicting interests of the public's right to access materials derived from an open criminal trial and the privacy rights of the victims and their families. Village Voice contends that the trial judge's refusal to unseal the transcripts of the "open" criminal trial constituted a clear violation of the press' constitutional right of access to such materials. We note that the media, including Village Voice, did not challenge the protective orders made during the trial. It is now too late for any such challenge. The victims and their parents contend that the transcripts must remain sealed. They say they fully cooperated based upon the State's *90 promise of the utmost confidentiality.[2]
The right of the public to attend public trials has long been recognized as an "indispensable attribute of an Anglo-American trial." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569, 100 S.Ct. 2814, 2823, 65 L.Ed.2d 973, 984 (1980). The purpose of open proceedings is to allow public scrutiny of the judicial process which in turn fosters confidence in the system.
[T]he right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and "of the press could be eviscerated." Branzburg [v. Hayes], 408 U.S. [665] at 681, 33 L.Ed.2d 626, 92 S.Ct. 2646 [at 2656 (1972)]. [Id. at 580, 100 S.Ct. at 2829, 65 L.Ed.2d at 991-992].
The trial judge attempted to protect the right of all media including Village Voice to attend an open trial while at the same time affording protection to the innocent trial participants through the protective order. Although the children testified in chambers, their testimony was transmitted by television to those in the court room. The public and the media were free to observe and comment on all aspects of the trial with the exception that the media was not permitted to publish the names, addresses and other identifying characteristics of the victims or their families. To this extent, the trial must be classified as less than an "open" trial.
The right of the press and the public to access criminal proceedings extends not only to their physical presence in the court room, but also to the transcripts of the proceedings. State v. Grecco, 187 N.J. Super. 421, 424-425 (App.Div. 1982). Generally, when the proceedings have been open, the courts have not hesitated to order that transcripts be made immediately available. "Once proceedings take place in open court they are `matters of public record and the news media has an absolute right to report thereon.'" Id. at 424, quoting Allen, *91 73 N.J. at 139. However, Village Voice is entitled to no greater access than was afforded the media at the trial, provided that limitation was proper.
The U.S. Supreme Court has consistently allowed publication of information obtained at court proceedings which were open to the public. In Cox Broadcasting Co. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the identity of a 17-year-old rape victim, obtained by a television newsman from official court records which were open to the public, was published. In the context of a damage suit for invasion of privacy, the Court opined:
We are reluctant to embark on a course that would make public records generally available to the media but forbid their publication if offensive to the sensibilities of the supposed reasonable man. Such a rule would make it very difficult for the media to inform citizens about the public business and yet stay within the law. The rule would invite timidity and self-censorship and very likely lead to the suppression of many items that would otherwise be published and that should be made available to the public. At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records. If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. [Id. at 496, 95 S.Ct. at 1046, 43 L.Ed.2d at 350].
Here, there was a measured response by the trial judge which gave recognition to the palpably objective reality that parents of three and four-year-old children have duties both to the State and to the well-being of their children which can be accommodated only by ensuring a substantial measure of protection from publicity when they cooperate in a criminal investigation and trial. In a sense, where persons of such tender age have an interest of importance which requires protection, we are all fiduciaries. The rights are not those of the parents alone. It is the children, who could not and cannot now speak for themselves, who have been rendered vulnerable now that the State's interest in law enforcement has been vindicated through cooperation achieved by representations of confidential media treatment.
*92 In Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977), the Court struck down a trial court's pretrial order prohibiting publication of the name or picture of a child involved in a juvenile proceeding at which the press was present. The Court held that the "First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public." Id. at 310, 97 S.Ct. at 1046, 51 L.Ed.2d at 357. Here, the proceedings were not open but rather were subject to restriction which went unchallenged at the time and remains unchallenged even in this litigation.
Although case law supports the conclusion that the transcripts of open criminal proceedings be made available to the media, the right of access is not absolute. Globe Newspaper Co., 457 U.S. at 606, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. Where "the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Id. at 607, 102 S.Ct. at 2620, 73 L.Ed.2d at 257.
A trial court determines on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interest of parents and relatives. [Id. at 608, 102 S.Ct. at 2621, 73 L.Ed.2d at 258].
Similarly, in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the Court opined:
The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. [Id. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638].
The trial judge weighed the interests of the children and their families against those of the media. He considered the minor victims' age, psychological maturity and understanding, the nature of the crime, the desires of the victims and the *93 interest of the parents and relatives. The judge then determined that the minors' interests substantially outweighed the interests of the public and media. We agree with the trial judge's finding that protection of the children's physical and psychological welfare constitutes a compelling state interest. His limitation upon the media at the criminal trial was constitutional and did not constitute an abuse of discretion.
However, by completely prohibiting media access to the transcripts, the trial court failed to consider the least intrusive alternative as mandated by Globe and Press-Enterprise. We find a continuing compelling public interest in protecting the physical and psychological welfare of the minor victims and safeguarding the parents' belief and prosecutorial assurance that the children's identity would not be published if they testified. Hence, publication of the victims' names, addresses or other identifying characteristics would have a detrimental effect on the well-being of the children and undoubtedly have a chilling effect on parents' willingness to allow their testimony in future prosecutions.
The media, including Village Voice, has a constitutional right of access to the transcripts of the Michaels trial, however, this right is not absolute or unconditional. When balancing the rights of each of the parties, the trial judge should make the following alternatives available to Village Voice or any other legitimate media representative. One alternative is for a court representative to exclude the names, addresses and any identifying characteristics of the victims and their families and provide a redacted version of the transcripts for the media such as Village Voice at the expense of the party requesting the transcripts. The trial judge should also appoint a guardian for the infants to review the redacted version before its release.[3]
*94 The second alternative is for Village Voice to execute a guarantee of non-disclosure and through its own means borrow or otherwise obtain access to an unredacted transcript co-extensive with the restrictions imposed upon all media at the trial. This arrangement does not impose a greater burden on Village Voice than that imposed upon other media during trial, nor does it afford greater rights.
Accordingly, we reverse and remand this matter to the trial judge for expedited action consistent with this opinion. The manner in which the transcripts shall be obtained, purchased and redacted is left to the sound discretion of the trial judge.
Affirmed in part, reversed in part and remanded. We do not retain jurisdiction.
NOTES
[1] These minor victims are represented by Miltz and Mantel; Hansbury, Martin and Knapp; Critchley and Roche; Goldberger and Finn; Clapp and Eisenberg, and Chiarolanza, DeAngelis & Moylen.
[2] The State has not formally expressed its interest in this issue. We rejected the suggestion that we informally interrogate the assistant prosecutor who tried the case and was a spectator at oral argument.
[3] We find very little difference between Village Voice's proposal to not publish the names, addresses and identifying characteristics of the victims and our determination that the transcripts be redacted.