848 A.2d 869 (2004)
369 N.J. Super. 305
STATE of New Jersey, Plaintiff-Respondent,
v.
Mark CUSUMANO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 2004.
Decided May 24, 2004.
*870 Yvonne Smith Segars, Public Defender, for appellant (Michael Jan, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General, for respondent (Adrienne B. Reim, Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, COLLESTER and FUENTES.
The opinion of the court was delivered by FUENTES, J.A.D.
In this appeal, the principal question we are called upon to answer is whether the trial court's instructions, advising those in attendance at this criminal trial, that no persons will be permitted to leave or enter the courtroom while the adolescent victim of sexual assault was on the witness stand, unconstitutionally deprived defendant's and the public's right to a public trial. Defendant Mark Cusumano brings this issue *871 before us in his appeal from the order of the Criminal Part denying his post-conviction relief (PCR) petition. In this PCR petition, defendant alleged ineffective assistance of counsel based, in part, on counsel's failure to object to this procedure.
We now hold that the procedure employed by the trial court here constituted a reasonable and constitutionally permissible limitation on the public's right of access. This procedure properly balanced the right of a public trial against the child victim's right to be treated with a modicum of sensitivity in this most difficult of circumstances.

I
Defendant was convicted of second-degree sexual assault N.J.S.A. 2C:14-2c and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a. He was sentenced to a term of ten years. We affirmed his conviction on direct appeal, State v. Cusumano, No. A-7041-98 (App. Div. June 1, 2001), and the Supreme Court denied certification. 170 N.J. 89, 784 A.2d 721 (2001).
On March 15, 2002, defendant filed a pro se PCR petition raising ineffective assistance of counsel claims. Assigned counsel filed a brief thereafter in support of the PCR petition. The Criminal Part denied defendant's petition without an evidentiary hearing. The court determined that defendant had failed to set out a prima facie case of ineffective assistance of counsel.
Defendant now appeals raising the following arguments:
THE PETITION FOR POST-CONVICTION RELIEF ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL, AND THUS THE COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING
A. STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS
B. FAILURE TO OBJECT TO CLOSING OF COURTROOM
C. FAILURE TO ADVISE DEFENDANT OF HIS RIGHT TO TESTIFY
D. FAILURE TO INVESTIGATE POTENTIAL DEFENSES
E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
We reject these arguments and affirm.
We described the salient facts of this case in our decision affirming defendant's conviction on direct appeal.
The charges against defendant arose from an incident in August 1995. Defendant and his wife were friends of the victim, M.P. and her family, and had been on several camping trips together. On the date in question, M.P., then age thirteen, and her sister J.P., then fourteen, were invited to defendant's house overnight. Defendant and his wife had installed a new swimming pool and had invited the children and their parents for a barbeque the following day. The children spent the day swimming, had dinner and played video games in the evening. M.P. testified that after defendant's wife retired for the night, the defendant took a shower and then returned to the living room clad only in a bathrobe. He sat on the couch, pretended to fall asleep, and then opened his robe, exposing his penis and genital area in front of the girls. M.P. and J.P. became upset, and J.P. threw a blanket over defendant to cover him up.
M.P. testified that defendant told J.P. to sleep on the sofa and for her to sleep in the upstairs guest bedroom. Later that *872 night M.P. was awakened by defendant touching her "chest and crotch area" and saw that the defendant was naked. He forced her to have oral sex, ejaculating in her mouth. M.P. testified that she then ran to the bathroom and took a shower.
A year later during the summer of 1996 M.P. told a friend about the incident, and the friend urged her to tell her mother. However, it was not until approximately another year had passed when the mother had mentioned previous camping trips with the defendant that M.P. told her mother about the incident. M.P. and her mother then went to the Washington Township Police Department where M.P. gave a statement to Detective Brecht about the incident.
[State v. Cusumano, supra (slip op. at 2-3).]
Against this factual backdrop, we will now address defendant's arguments.

II
A defendant alleging ineffective assistance of counsel must establish that his or her "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984). In State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), our Supreme Court adopted the Strickland standards.
[A] defendant whose counsel performed below a level of reasonable competence must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
[Id. at 60-61, 519 A.2d at 346 (quoting Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).]
Thus, to establish a prima facie claim of ineffective assistance of counsel, defendant must meet both prongs of the Strickland/Fritz test. First, he must show that the actions of his trial counsel were deficient in performance and not objectively reasonable. Second, defendant must show that this deficient performance materially affected the outcome of his trial. In determining whether defendant has met the first prong of the Strickland/Fritz test, an appellate court will not second-guess defense counsel's trial decisions which rest upon strategic or tactical considerations. Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976); State v. Buonadonna, 122 N.J. 22, 38, 583 A.2d 747, 755 (1991).
Defendant has failed to present sufficient evidence to meet his burden of establishing a prima facie case of ineffective assistance of counsel. As a threshold issue, we note that defendant raised ineffective assistance of counsel as an issue on direct appeal. Thus, as the State correctly points out in its brief, "he should be barred from raising new grounds against his trial counsel" here. R. 3:22-5.
Defendant concedes that this issue should have been raised on direct appeal. He, nevertheless, argues that failure to have done so is indicative of the ineffective assistance of appellate counsel. Because defendant's argument touches upon an issue of constitutional magnitude, we will address it here in the interests of justice and of affording defendant a complete opportunity for judicial review of his conviction. State v. Mitchell, 126 N.J. 565, 584, 601 A.2d 198, 207 (1992); State v. Damon, 286 N.J.Super. 492, 496, 669 A.2d 860, 862 (App.Div.1996).
The trial record here reveals that in the course of the victim's[1] testimony, the trial *873 judge advised an unidentified individual that, upon the State's application, he had decided "not to have anyone come or go during ... [her] testimony." Defense counsel did not object to this procedure.
We begin our analysis of this issue by noting that "[a] trial judge has the ultimate responsibility to control the trial in the courtroom and is given wide discretion to do so." Horn v. Village Supermarkets, Inc., 260 N.J.Super. 165, 175, 615 A.2d 663, 668 (App.Div.1992), certif. denied, 133 N.J. 435, 627 A.2d 1141 (1993). The exercise of this authority, however, is circumscribed by the judge's responsibility to act reasonably and within constitutional bounds. Ryslik v. Krass, 279 N.J.Super. 293, 297-98, 652 A.2d 767, 769 (App.Div. 1995).
Both defendant and the general public have a constitutionally protected right of access to criminal trials. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 992 (1980); In re Application of VV Publ'g Corp., 120 N.J. 508, 514, 577 A.2d 412, 415 (1990). As the branch of government entrusted with the enforcement of our criminal laws and the vindication of the rights guaranteed by our federal and state constitutions, there is an indisputable institutional value in ensuring the public's right of access to judicial proceedings. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606, 102 S.Ct. 2613, 2619-20, 73 L.Ed.2d 248, 256-57 (1982).
Despite these public policy and constitutional considerations, the public right of access to a criminal trial is not absolute. A trial judge may impose "reasonable and, as circumstances may dictate, well-considered limitations on access to a trial in order to prevent situations which might impede the progress or fairness of the trial, as long as basic rights involved are not unduly infringed." State v. Cuccio, 350 N.J.Super. 248, 266, 794 A.2d 880, 890-91 (App.Div.), certif. denied, 174 N.J. 43, 803 A.2d 638 (2002).
With these legal principles in mind, we will now consider the circumstances of this case.

III
M.P. was thirteen-years-old when she was sexually assaulted by defendant. She did not disclose the assault to her mother until two years later. The abuse caused M.P. severe emotional and psychological trauma. Her academic performance in school dropped precipitously, she developed an addiction to illicit drugs and was hospitalized for an attempted suicide.
She was seventeen-years-old at the time of trial. Her testimony involved a graphic description of the assault, with defendant obviously present in the courtroom. In the course of both her direct and cross-examination testimony, M.P. became emotionally shaken to such an extent that the court had to take several recesses in order for her to regain her composure. In short, her appearance and testimony in this trial was an emotionally difficult and psychologically trying experience for this young girl.
Under these circumstances, we consider the trial judge's decision to advise those in attendance that no persons would be permitted to leave or enter the courtroom while this young victim of sexual assault *874 was on the witness stand, to have been a reasonable and constitutionally permissible limitation on the public's right of access. It is important to emphasize that, under this arrangement, the judge did not expel the public from the courtroom or otherwise conduct a closed or sealed proceeding. The instructions given here only prohibited the coming and going of persons while the witness was testifying.
This accommodation struck an appropriate balance between two competing interests: (1) the public's and defendant's right to an open and public trial; and (2) the statutory obligation of the trial court to provide a measure of sensitivity for the plight of this young victim, as she was forced to relive this horrific event in this strange and unnatural setting, under the unrelenting scrutiny of the jury, the judge, counsel, the public, and perhaps from her point of view, the most intimidating figure of all, defendant himself. See generally "Crime Victim's Bill of Rights," N.J.S.A. 52:4B-34 to -38.[2]
The record here is not clear as to whether the trial judge made any announcement to those in attendance of his decision to employ these restrictions prior to the commencement of this witness's testimony. We think the better practice is for the judge to make such an announcement as early as possible. The goal should be to afford all those who wish to be present in the courtroom while the witness is testifying the maximum opportunity for doing so. Upon any subsequent objection raised by any excluded member of the public, including any media organization, the court should inform the objector of the availability of a redacted transcript. See In re Application of VV Publ'g Corp., supra, 120 N.J. at 517, 577 A.2d at 416; N.J.S.A. 2A:82-46.

IV
Defendant's other arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We make only the following brief comment. The record here shows that the trial court did not directly question defendant or his counsel about his decision not to testify on his own behalf.
We believe the better practice is for the trial judge to inquire of defense counsel, directly and on the record, whether he or she has advised defendant of his option to waive his right to testify at trial. If defendant decides not to testify, the judge should directly inquire of counsel whether he or she wishes for a specific "no negative inference" jury charge to be given. State v. Savage, 120 N.J. 594, 631, 577 A.2d 455, 473 (1990). Failure to address these issues, however, is not legal error when defendant, as here, was represented by counsel. State v. Bogus, 223 N.J.Super. 409, 424, 538 A.2d 1278, 1286 (App. Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988).
Affirmed.
NOTES
[1] Ordinarily, we would refer to the victim as the complaining witness or purported victim. However, because defendant's guilt has been conclusively established by a jury, and his conviction affirmed on direct appeal, M.P.'s status as a victim of sexual assault is no longer in doubt.
[2] See specifically N.J.S.A. 52:4B-36, which affords a crime victim the right to: "[a] ... be treated with dignity and compassion by the criminal justice system; ... [c] ... be free from intimidation; and [d] ... have inconveniences associated with participation in the criminal justice process minimized to the fullest extent possible."