800 A.2d 177

LUPITA SALEMKE, ADMINISTRATRIX OF THE ESTATE OF GINGER TRUAN AND LUPITA SALEMKE, INDIVIDUALLY, PLAINTIFF–APPELLANT, v. BRIAN SARVETNICK, DEFENDANT, AND NOW MANAGEMENT COMPANY, INC., T/A THE CLUBHOUSE, INC., AND STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 29, 2002—Decided June 27, 2002.

Before Judges STERN, LINTNER and PARKER.

*Dennis M. Mahoney* argued the cause for appellant.

*Erik Anderson* argued the cause for respondent Now Management Company, Inc., t/a The Clubhouse (*Bolan, Jahnsen & Ball*, attorneys; *Vicki Shea–Connolly*, on the brief).

*Alfred M. Low–Beer* argued the cause for respondent State of New Jersey (*David Samson*, Attorney General, attorney; *Patrick DeAlmeida*, Deputy Attorney General, of counsel; *Mr. Low Beer*, on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Plaintiff, Lupita Salemke, individually and as Administratrix of the Estate of Ginger Truan, filed a wrongful death action arising out of a fatal automobile accident in which Truan was killed instantly while operating her motor vehicle. The accident occurred at the intersection of Route 22 East and Watchung Avenue in North Plainfield at approximately 1:26 a.m on January 13, 1995. Watchung Avenue in a northerly direction is controlled by a stop

sign and forms a "T" intersection with Route 22 East, which is separated from its westbound lanes by a concrete barrier. Northbound traffic on Watchung Avenue cannot pass across Route 22 but must turn right onto Route 22 East. On the night of the accident, plaintiff's decedent approached the intersection, failed to stop at the stop sign, continued as if she was intending to cross Route 22, struck and bounced off the concrete barrier and was struck by another vehicle, operated by Brian Sarvetnick, who was traveling east on Route 22.

Plaintiff's complaint named Sarvetnick as a defendant, along with the State of New Jersey and Now Management Company, Inc., trading as The Clubhouse (The Clubhouse).[1] Plaintiff alleged that 1) Sarvetnick negligently operated his motor vehicle, 2) the State was liable for maintaining a dangerous condition at the intersection, and 3) The Clubhouse had negligently served alcoholic beverages to Truan while she was visibly intoxicated, prior to the accident. Summary judgment was granted dismissing plaintiff's complaint against The Clubhouse on June 27, 1997. On July 15, 1997, plaintiff filed a motion for reconsideration, at which time the motion judge withheld ruling and permitted plaintiff to apply again for reconsideration after additional discovery was completed. Thereafter, plaintiff retained Richard Saferstein, Ph.D., and moved for reconsideration seeking to vacate the summary judgment previously entered in favor of The Clubhouse based on Saferstein's report. On February 6, 1998, following oral argument on the motion, the judge denied plaintiff's motion for reconsideration. The matter then proceeded to trial against Sarvetnick and the State on October 17, 2000.

At the beginning of the trial, plaintiff's motion *in limine* to exclude evidence of the decedent's blood alcohol content as contained in a toxicology report prepared by the State Medical

---

[1] North Plainfield and Somerset County were also named as defendants and successfully moved for summary judgment after discovery revealed that the intersection was controlled by the State.

Examiner was denied. Sarvetnick settled with plaintiff during trial and the jury returned a verdict finding that even though the State maintained a dangerous condition, that condition was not a proximate cause of the accident. The trial judge entered judgment of no cause for action.

Plaintiff appeals the order for summary judgment dismissing her complaint against The Clubhouse and the judgment of no cause for action in favor of the State, contending:

POINT I

IT WAS ERROR TO ADMIT EVIDENCE OF PLAINTIFF'S PRE–ACCIDENT ALCOHOL CONSUMPTION.

POINT II

GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CLUBHOUSE WAS IN ERROR.

We reject plaintiff's contentions and affirm.

We restate only those facts necessary for the disposition of this appeal. The following evidence was elicited from Tara Balka, a friend of the decedent who was the passenger in her vehicle at the time of the accident. On January 12, 1995, Truan picked up Balka and drove to The Clubhouse, a nightclub in Plainfield, arriving at 11:30 p.m. The two women, employees of The Clubhouse, were not working that evening but went there because they wanted to "go out." Neither of them had consumed any alcohol prior to arriving at The Clubhouse.

Upon arrival, the two women socialized separately "but ran into each other a few times." Balka observed Truan with a "beer in her hand," and stated that Truan "was drinking beer." However, she also stated that Truan did not appear to be intoxicated. "Last call" at the bar was at 12:45 a.m., and no alcoholic beverages were served after that time. The two women remained at The Clubhouse until the 1:00 a.m. closing time, helping their friends clean up. After spending approximately ten minutes talking with their friends in the parking lot, they left together with Truan driving and Balka in the front seat. Although Balka knew that Truan had been drinking, she was "not at all concerned about her ability to drive" and stated that Truan "did not appear to be intoxicated."

However, on cross-examination, Balka acknowledged that she, herself, had been drinking that night ("three beers and a shot") and that as soon as she had one drink she did not believe she was capable of noticing whether someone else was intoxicated.

They proceeded northbound on Watchung Avenue heading toward the intersection of Route 22. At trial, Balka described the intersection, indicating that there were no streetlights or reflectors illuminating the concrete divider nor was there a one-way sign depicting the direction traffic was to proceed on the eastbound lanes of Route 22. On the other side of Route 22, Watchung Avenue continues North. An overpass crosses the highway slightly to the west of Watchung Avenue. Where the overpass rejoins Watchung Avenue north of Route 22 there is a traffic light, which is visible to drivers approaching Route 22 from the south, as Truan was doing.

Balka testified that as the vehicle approached the intersection she saw the concrete divider looming ahead and could not understand why Truan was not stopping or slowing down. At trial, Balka testified that she could not remember whether she saw the stop sign but acknowledged having testified at her earlier deposition that she noticed the approaching stop sign. Balka screamed for Truan to stop and slow down before the vehicle collided with the concrete divider. According to Balka, Truan maintained her speed, did not take her foot off the gas pedal and did not seem to hear her screams. It appeared to Balka that Truan "was trying to catch the light."

The impact caused Balka, who was not wearing a seatbelt, to be thrown on top of Truan. Truan was pronounced dead at the scene at 1:53 a.m. Balka was "seriously" injured, but survived the accident.[2] A toxicology report prepared by the State Medical Examiner's office found the decedent to have a blood alcohol level of .167 percent. The report also found levels of .131 percent in the vitreous (fluid in the eye) and .129 in the brain.

---

2 Balka settled her consolidated action with the estate prior to the trial.

Initially, summary judgment was granted in favor of The Clubhouse because there was no evidence presented that plaintiff's decedent was served alcohol while visibly intoxicated. *N.J.S.A.* 2A:22A–5b. In his December 23, 1997 report, Dr. Saferstein found that the decedent, who weighed 130 pounds, "would have exceeded the brain alcohol concentration of .10 percent after 12:50 a.m." and that her brain alcohol concentration would have risen to the level of .12 percent at 1:25 a.m., the time of the accident. He observed that "[a]n average individual exhibiting a brain alcohol level at or in excess of .10 percent is to be considered visibly impaired," and concluded that "from approximately 12:50 a.m. Ms. Truan would have exhibited increasing physical manifestations and the unmistaken signs of alcohol intoxication." His report also indicated that, at a brain alcohol level of .12 percent, an individual is "considered in a significantly impaired state," which would "adversely affect visual acuity resulting in significant loss of depth and distance perception." His report also concluded that such a person would be "over ten times more likely to become involved in accidents when compared to sober drivers."

Addressing the merits of plaintiff's motion for reconsideration, the motion judge observed:

> Plaintiff does not have any direct evidence such as from a witness, other customers, bartenders or anyone else, that Ginger Truan was visibly intoxicated during the time that she was in the bar.

> Plaintiff instead relies on an expert report that based on her brain alcohol level at the time of the autopsy and the time of the beginning of the consumption of alcohol that night, that she would have shown signs, visible signs of intoxication at 12:50 a.m. Assuming the expert's report is correct . . . and that it would be believed by a jury, there is still a missing element, which is that under the statute that I've previously cited, which is the exclusive remedy against . . . The Clubhouse, the plaintiff must show that the bar served her after 12:50 a.m. The evidence in the case is that the bar had a last call at 12:45. There is no evidence that she was served after that time. Or after 12:50 a.m.

In her *in limine* motion, plaintiff sought to exclude evidence of intoxication, framing her motion in the following way.

> Plaintiff's decedent had a blood alcohol of .167, a brain alcohol of .12 per the toxicology report in the autopsy. Based upon the ruling in *Gustavson v. Gaynor*, 206 *N.J.Super.* 540, 503 *A.2d* 340 (App.Div.1985), *certif. denied*, 103 *N.J.* 476, 511

A.2d 655 (1986) my motion is that any evidence of her intoxication be excluded from evidence in this case.

Now while it's clear, at least everyone has been assuming, including plaintiff's former counsel who filed suit in this case, that drinking and driving played a role in this accident, I submit to the Court that it's unfair to on the one hand rule that plaintiff decedent showed so little sign of intoxication so as to create liability against the drinking establishment, but on the other hand, indicate that the standard set forth in *Gustavson v. Gaynor* is satisfied so that the level of intoxication can be presented to the jury.... But in the law of this case with the posture of this case, if we're going to preclude the liability of the dram shop as a matter of law, then we ought to, on the basis that she was not sufficiently showing sufficient supplementary evidence of intoxication, then we ought to exclude the evidence of intoxication in the rest of the case.

Denying plaintiff's motion, the trial judge concluded that the jury had the right to hear evidence of the percentage of decedent's blood and brain alcohol content, as well as factual evidence of the alcohol she consumed.

Plaintiff proceeded to trial, arguing that the State maintained a dangerous condition of its property which proximately caused Truan's death. In support of her position, plaintiff presented the expert testimony of Dr. Ira Kuperstein, a transportation engineer who stated that, as a result of the traffic light situated beyond Route 22 and inadequate lighting and signage in the area, an approaching driver such as Truan may be lead to think that Watchung Avenue continues straight through Route 22.

■ On appeal, plaintiff makes the same argument in Point I of her appellate brief that she made to the trial judge in her motion *in limine.* She asserts the motion judge found that there was "no proof" that plaintiff's decedent "ever exhibited any signs of intoxication while at the Clubhouse" was tantamount to a finding that "there was no 'supplementary evidence'... of intoxication." Plaintiff concludes, therefore, that "it was prejudicial to the plaintiff to allow the State to argue that decedent's alcohol consumption affected her ability to drive."

■ Plaintiff's arguments are misplaced. Our ruling in *Gustavson v. Gaynor,* 206 *N.J.Super.* 540, 503 *A.*2d 340 (App.Div.1985), *certif. denied,* 103 *N.J.* 476, 511 *A.*2d 655 (1986), is not applicable

here as it did not involve admission of evidence bearing upon blood alcohol or brain alcohol readings. Plaintiff mistakenly characterizes the findings of the motion judge and the standard needed to meet her burden of proof against The Clubhouse. The motion judge found that there was no evidence that plaintiff's decedent showed "signs of visible intoxication" at the time she was served alcoholic beverages at The Clubhouse. *N.J.S.A.* 2A:22A-5. He did not determine that there was an absence of "any signs of intoxication," as argued by plaintiff. Moreover, the burden of proof in a dram shop case is different from that required to prove impaired operation of a motor vehicle because it has the added element of visible intoxication when served. *Fisch v. Bellshot,* 135 *N.J.* 374, 390–91, 640 *A.*2d 801 (1994) (bartender's dram shop liability is based on "increased ability to assess the progression of intoxication" by visual means unknown to average person); *Showalter v. Barilari,* 312 *N.J.Super.* 494, 507, 712 *A.*2d 244 (App.Div. 1998) (patron's inability to assess risks is presumed where bartender serves alcohol to visibly intoxicated person).

Here, the unchallenged brain and blood alcohol readings themselves bespeak intoxication. *Wallace v. Ford Motor Co.,* 318 *N.J.Super.* 427, 723 *A.*2d 1226 (App.Div.1999). Plaintiff never challenged either the accuracy or authenticity of the State's toxicology report nor did she argue against its admission based upon the State's failure to have an expert who could relate the percentage of blood and brain alcohol to the ability to operate an automobile. Plaintiff never suggested in her *in limine* motion that the readings were inconsistent with intoxication. Had plaintiff taken such a position it would have been in direct conflict with her own expert's report which, although not intended to be used in the case against the State alone, concluded that, based upon her percentage of brain alcohol, Truan was "in a significantly impaired state at the time of her involvement" in the accident. Under these circumstances, we fully understand why a contrary position was not taken by counsel. Moreover, we are satisfied that plaintiff decedent's pre-accident consumption, her failure to respond to her passenger's screams and her blood and brain alcohol content,

under the circumstances of this case, were probative and properly considered by the jury and not outweighed by any prejudice that might flow from them. *N.J.R.E.* 403.

Plaintiff's argument that the motion judge improperly granted summary judgment in favor of The Clubhouse is legally and factually unsupported and does not warrant further discussion in a written opinion. *R.* 2:11–3(e)(1)(E). The judge correctly found, after considering Saferstein's report, that there were insufficient facts to establish a genuine issue of material fact, as required by *N.J.S.A.* 2A:22A–5, that The Clubhouse "served a visibly intoxicated person." *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 666 *A.2d* 146 (1995). There was no testimony that Truan was served when she was visibly intoxicated and Saferstein's opinion confirmed that she had not reached a stage of visible intoxication until after the last beverages were served.

Affirmed.