834 A.2d 448 (2003)
364 N.J. Super. 48
Theresa TUCCI, Paul Tucci, her husband, Angela Greener and John Greener, her husband, Plaintiffs-Appellants,
v.
TROPICANA CASINO AND RESORT, INC. and Millar Elevator Service Company, Defendants-Respondents, and
Adamar of New Jersey, Inc., d/b/a Tropicana Casino and Resort, Third-Party Plaintiff/Respondent, and
Zurich Insurance Company, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 2003.
Decided November 10, 2003.
Jonathan P. Arnold argued the cause for appellants (Craner, Satkin & Scheer, attorneys; Mr. Arnold, on the brief).
Thomas F. Bradley, Atlantic City, argued the cause for respondent Adamar of New Jersey, Inc., d/b/a Tropicana Casino and Resort (Hankin, Sandman, Bradley & Palladino, attorneys; Mr. Bradley, on the brief).
John W. Reinman argued the cause for respondent Millar Elevator Service Company (Lamb, Hartung, Kretzer, Reinman & DePascale, attorneys; Mr. Reinman, on the brief).
Before Judges PRESSLER, ALLEY and BILDER.
The opinion of the court was delivered by
*449 PRESSLER, P.J.A.D.
This negligence action was brought by plaintiffs Theresa Tucci and Angela Greener, both of whose husbands sued per quod, to recover for the injuries the two women sustained when they fell in an improperly leveled elevator in the Tropicana Casino and Resort. They joined as defendants Adamar of New Jersey, Inc., d/b/a Tropicana, and Millar Elevator Service Company, which had a contract with Tropicana to provide it with elevator maintenance services. The action was dismissed with prejudice as against Millar by reason of plaintiffs' service of their expert report on defendants thirty-nine days after its due date and as against Tropicana because of the failure of plaintiffs to demonstrate a prima facie case of liability against it. Indeed, the late expert report attributed no negligence to Tropicana. Plaintiffs appeal only from the dismissal of their action as against Millar, and we do not, therefore, address the dismissal as against Tropicana. We reverse the order dismissing as to Millar.
The accident occurred in November 1998, and the complaint was filed just short of two years later. The case was assigned to Track 2 and hence was subject to a 300-day discovery period. R. 4:24-1. The discovery-end date was thereafter extended to December 14, 2001, and a trial scheduled for May 20, 2002. Although defendants filed timely answers to plaintiffs' interrogatories, plaintiffs were not satisfied that they had received all the available elevator maintenance records, which they then sought by letter to counsel. Those records were apparently not made available to them until the mandatory non-binding arbitration proceeding held pursuant to R. 4:21A on December 13, 2001, following which defendants filed a demand for a de novo trial. Apparently the issue of the completeness of the elevator maintenance records provided to plaintiffs was not settled between the attorneys until the end of January 2002, some six weeks after the discovery-end date.
Because plaintiffs asserted that their elevator expert could not begin his work until all the records had been made available to him, they requested a case management conference. Acceding to that request, the court held a telephone conference on April 24, 2002, and its dispositions were memorialized in an order dated May 14, 2002. The case management order allowed plaintiffs until May 24, 2002, for service of their expert's report, gave leave to defendants to depose plaintiffs' expert and to serve rebuttal expert reports, and rescheduled trial for September 9, 2002.
As matters developed, the attorneys had some difficulty in scheduling the inspection of the elevator by plaintiffs' expert, and the inspection took place, with defendants' apparent consent, on June 7, 2002, two weeks after the deadline for service of the report fixed in the case management order. The report itself was not served on defendants until July 2, 2002, thirty-nine days after the due date. Defendants moved for various forms of relief including the barring of plaintiffs' experts' testimony by reason of the late report. The motion was granted in that respect, and the action was ultimately dismissed with prejudice. Although not asserted by plaintiffs' attorney in his original opposition to the motion, he submitted a certification in support of plaintiffs' unsuccessful motion for reconsideration attesting to his preoccupation at the time of these critical litigation events with his mother's terminal illness and her demise on April 26, 2002.
In dismissing the complaint with prejudice because of the late report and denying the motion for reconsideration, the judge noted plaintiffs' failure to seek relief from *450 the May 24 deadline or otherwise to move for extension of the discovery-end date and relied as well on defendants' assertion that the expert report had opened up new areas of inquiry that had to be explored. Our review of the record satisfies us, however, that the judge's perceptions provided an insufficient basis for the ultimate sanction of dismissal with prejudice, that it failed to take into account other countervailing considerations, and that the dismissal with prejudice constituted a mistaken exercise of discretion.
To begin with, we think it plain that prior to the 2000 rule amendments denominated Best Practices, the late service of the expert report by plaintiffs might have resulted in some appropriate sanction, but the case would not and should not have been dismissed with prejudice. In sum, plaintiffs' failure to serve the report on time was neither willful nor intended to mislead. There were legitimate problems caused by the late submission to them of the elevator maintenance records and the necessity of determining if all of them had been submitted as well as difficulties in arranging for the inspection. Beyond that, plaintiffs' attorney had a good and sufficient reason just at the time the report was coming due for his non-attendance at his office. By the same token, the defendants failed to show any irremediable prejudice. In these circumstances, as we had repeatedly held prior to Best Practices, the ultimate sanction for an attorney's procedural violations of dismissal with prejudice must be a recourse of last resort, not to be invoked unless no lesser sanction is adequate in view of the nature of the default, its attendant prejudice to other parties, and the innocence of the sanctioned litigant. See, e.g., Woodward-Clyde v. Chem. & Pollution Sciences, 105 N.J. 464, 471, 523 A.2d 131 (1987); Zaccardi v. Becker, 88 N.J. 245, 253, 440 A.2d 1329 (1982); Irani v. K-Mart Corp., 281 N.J.Super. 383, 387, 657 A.2d 911 (App. Div.1995); Georgis v. Scarpa, 226 N.J.Super. 244, 249-250, 543 A.2d 1043 (App.Div. 1988); Johnson v. Mountainside Hosp., 199 N.J.Super. 114, 119-120, 488 A.2d 1029 (App.Div.1985); Jansson v. Fairleigh Dickinson University, 198 N.J.Super. 190, 195, 486 A.2d 920 (App.Div.1985). We had been particularly indulgent in not barring a late expert's report where the report was critical to the claim or defense, the late report was submitted well before trial, the defaulting counsel was not guilty of any willful misconduct or design to mislead, any potential prejudice to the adverse party could be remediated, and the client was entirely innocent. See, e.g., O'Connor v. Altus, 67 N.J. 106, 129-130, 335 A.2d 545 (1975); Mason v. Sportsman's Pub, 305 N.J.Super. 482, 493-494, 702 A.2d 1301 (App.Div.1997); Glowacki v. Underwood Memorial Hosp., 270 N.J.Super. 1, 13-14, 636 A.2d 527 (App.Div.1994); Gaido v. Weiser, 227 N.J.Super. 175, 192-193, 545 A.2d 1350 (App.Div.1988), aff'd, 115 N.J. 310, 558 A.2d 845 (1989).
The Best Practices rules were "designed to improve the efficiency and expedition of the civil litigation process and to restore state-wide uniformity in implementing and enforcing discovery and trial practices." Vargas v. Camilo, 354 N.J.Super. 422, 425, 808 A.2d 103 n.l (App.Div. 2002), certif. denied, 175 N.J. 546, 816 A.2d 1048 (2003). They were not designed to do away with substantial justice on the merits or to preclude rule relaxation when necessary to "secure a just determination." R. 1:1-2. While we agree that the Best Practices rules were intended to counteract an unfortunate and increasingly dilatory, casual and desultory approach by some members of the bar to their litigation responsibilities, the fulfillment of that function does not mandate dismissal of this action with prejudice.
*451 Surely, plaintiffs' attorney might well have sought a further extension of the expert-report deadline. On the other hand, he reasonably relied on the cooperation of his adversaries who made no objection to the expert's inspection of the elevator after the submission deadline. We point out, moreover, that the litigation process cannot effectively take place without some measure of cooperation among adversaries. Clearly the court ought not be unduly applied to for relief that the parties are able to arrange for themselves without prejudice to the justice system. Beyond that, the trial court's concern for the additional discovery by defendants that the expert report would require cannot justify the dismissal with prejudice. The May 14 case management order anticipated the necessity for that additional discovery. Hence, the late report simply delayed that supplementary discovery by thirty-nine days. If the thirty-nine-day delay resulted in an inability of the parties to complete the additional discovery in the more than two months remaining prior to the trial date, then the trial date could have been adjourned. It was still sufficiently far off that the court's own schedule could have made that accommodation. We point out that a major concern of the Best Practices rules was the establishment of credible trial dates by the avoidance of last-minute or "eve of trial" adjournments by reason of incomplete discovery. See generally R. 4:36-3. It does not appear that that concern was substantially implicated here. Finally, we note that plaintiffs' attorney's personal situation by reason of his mother's terminal illness and death provided good cause, if not extraordinary circumstances, mandating a reasonable modicum of judicial indulgence. See, e.g., O'Donnell v. Ahmed, 363 N.J.Super. 44, 51, 830 A.2d 924 (Law Div.2003).
In sum, we are satisfied that under the totality of the circumstances, the dismissal with prejudice as against Millar was improvident.
We reverse the order dismissing the action as to defendant Millar Elevator Service Company with prejudice, and we remand to the trial court for further proceedings.