925 A.2d 54 (2007)
394 N.J. Super. 1
Leslie CONRAD, Plaintiff-Appellant,
v.
MICHELLE & JOHN, INC., d/b/a Nipper's Pub, Defendant-Respondent, and
NCO Financial Systems, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2007.
Decided June 19, 2007.
*56 Robert R. Nicodemo III, Haddonfield, argued the cause for appellant (Law Office of Robert R. Nicodemo III, attorney; Richard V. Cosentino, on the brief).
Joseph Goldberg, Philadelphia, PA, argued the cause for respondent (Weber Gallagher Simpson Stapleton Fires & Newby, attorneys; Mr. Goldberg and Wendi D. Barish, on the brief).
Before Judges WINKELSTEIN, FUENTES and BAXTER.
The opinion of the court was delivered by
FUENTES, J.A.D.
On June 16, 2001, plaintiff Leslie Conrad was a passenger in an automobile driven by Robert Isom, when he crashed into a utility pole in Deptford Township. Plaintiff filed a civil action alleging that the personal injuries she sustained in this accident were the result, at least in part, of the negligent service of alcoholic beverages by defendant, Michelle & John, Inc., d/b/a Nipper's Pub, a licensed alcoholic beverage server. N.J.S.A. 2A:22A-5.[1]
This appeal concerns the propriety of the trial court's order dismissing plaintiff's case with prejudice, as a sanction for plaintiff's failure to produce her expert at a court-ordered N.J.R.E. 104 hearing. The court scheduled the hearing to determine the scientific methodology used by plaintiff's expert in concluding that Isom's blood alcohol content (BAC) was approximately .15 at the time he was still being served alcoholic drinks at defendant's tavern. The court also found that the material facts of the case were undisputed, entitling defendant to a judgment in its favor as a matter of law.
We reverse. We hold that, absent a bona fide and timely in limine application by defendant seeking to bar plaintiff's expert testimony, the trial court has no basis to order plaintiff's expert to respond to an N.J.R.E. 104 hearing to determine the scientific validity of his or her opinions.
We further hold that there are sufficient material issues of fact in dispute, giving plaintiff the right to present her case to a jury. Although the record shows that plaintiff's eyewitness recanted a crucial part of his testimony at his deposition, the question of credibility remains fundamentally a jury issue; a jury is free to accept or reject, in whole or in part, any version of a witness's testimony.
We will address these issues in the following factual context.

I
At approximately 10:00 p.m. on the night of the accident, Isom drove his car to pick up plaintiff at her job at Pizzeria Uno in Deptford Township. He waited about forty minutes for her to finish her shift. As he waited, Isom drank a "tall" glass of beer. From there, the two went to defendant's tavern, arriving at approximately 11:00 p.m. He remained inside the tavern for about two hours, consuming at least one shot of Crown Royal whiskey and an *57 undetermined number of Miller Lite beers. Plaintiff's coworker Matthew Smogey was also at Nipper's Pub that night.
After leaving Nipper's Pub, plaintiff got into the front passenger seat of Isom's car; Isom got into the driver's seat. The accident occurred at approximately 2:52 a.m.; police were notified of the crash about eight minutes later. Isom was transported to Cooper Hospital. At 5:30 a.m., two blood samples were taken from Isom. At the time, the police were investigating a possible charge of driving under the influence. The two vials of blood were submitted to the South Regional Laboratory of the State of New Jersey for analysis. The report of a Headspace Gas Chromatography test, dated July, 12, 2001, revealed that Isom's BAC at the time the blood was taken on June 16, 2001, was .14.
After completion of discovery, defendant moved for summary judgment, arguing that plaintiff had failed to present any evidence to prove that Isom was visibly intoxicated when he was last served at Nipper's Pub. In opposition to the motion, plaintiff filed an affidavit from Smogey, who averred that, while seated at a table with both plaintiff and Isom, he observed "both of them to be extremely intoxicated and observed them both served alcohol [by defendant's employees] during this time."
Confronted with this material factual issue in dispute, the court denied defendant's summary judgment motion, and ordered defendant to depose all of the individuals who claimed to have seen Isom being served alcoholic drinks on the night of the accident. After some initial problems in securing his appearance, defendant was able to take Matthew Smogey's deposition.
Smogey testified that he worked with plaintiff at Pizzeria Uno. He arrived at defendant's tavern at approximately 10:00 p.m., and remained there until it closed at about 2:30 a.m. In the course of being questioned by plaintiff's counsel, Smogey gave the following testimony of his interactions with both plaintiff and Isom.
Q. Do you recall being with Leslie Conrad and Mr. Isom that evening at Nipper's?
A. Yes. I was there.
Q. Okay. Do you recall where you were in the bar that evening with Leslie Conrad and Bob Isom?
* * * *
A. We all sat together. It was a group.
Q. Okay. Who else was in the group that you were sitting with?
A. Coworkers. You know, they came out that night. You want names?
Q. Yes.
A. Carrie was there. Armstrong was there. Smith was there. And there was two other people that were there. I don't recall their names. It's been a while.
* * * *
Q. Do you recall where you were in Nipper's that evening?
A. Yeah. We were out on the deck.
Q. Can you explain in more detail what out on the deck actually means or connotates [sic]?
A. We put two tables together. We sat out on the deck.
Q. Okay. And was Robert Isom and Leslie Conrad with you when you were out on the deck?
A. Yes.
Q. Okay. What were you doing during this time?
A. Drinking. Talking.

*58 Q. Okay. And in your estimate, what was the time frame that you were out on the deck with the individuals that you indicated?
A. 10:00 to close.
* * * *
Q. And closing being what time?
A. Around 3:00, after they did last call.
Q. Okay. Is it your belief that during this time which you indicated was 10:00 to close, that Leslie Conrad was consuming alcohol and Robert Isom, also, was consuming alcohol?
A. Yes. Everyone was.
Q. Okay. To your recollection was Leslie Conrad visibly drunk or intoxicated during this time and was Robert Isom visibly intoxicated during this time?
A. Yes.
Q. To your recollection, were they served alcohol during this time when they were visibly intoxicated?
A. Yes.
In the course of being questioned by defense counsel, Smogey clarified that he observed Isom drink over a period of two hours a variety of alcoholic drinks, including "shots." Through a series of specific questions designed to pinpoint the precise timeframe when Isom appeared to be visibly intoxicated, Smogey testified as follows:
Q. So on the times that you had sat with this gentleman who you knew to be Leslie's boyfriend that evening, and either someone had gone up to get drinks or however the drinks were served at the table in which he was in your presence, for that entire period of time between what you estimated to be at least before midnight and this last call between 2:30 and 2:45, you had not detected that he appeared to be visibly intoxicated; is that correct?
A. Yes.
Q. And you don't know what he drank when he ordered, whatever he ordered; correct? You only know it was a beverage in a [g]lass?
A. Yes.
Q. And then, sometime after that, as he was walking out, you first detected that he appeared to be visibly intoxicated, he being Bobby Isom?
A. Yes.
* * * *
Q. Okay. I believe you told me that it was as he was walking out that you first detected Bobby Isom appeared to be visibly intoxicated; correct?
A. Yes.
Q. Tell me what you observed that led you to believe that.
A. Slurred speech, and just to say he wasn't walking a straight arrow. A straight line, I should say.
Q. Any other reason besides what you've given me?
A. And the eyes. The eyelid, red.
Q. Now, the tables that you were seatedyou were seated at tables at the patio; right?
A. Yes.
* * * *
Q. Did you watch Bobby Isom leave Nipper's? Did you watch him walk out?
A. Yes.
Q. What did you observe?
A. Him walking out with Leslie.
Finally, defense counsel confronted Smogey with the affidavit he had signed attesting that he had observed both plaintiff and Isom "being served while extremely intoxicated." Smogey repudiated the *59 statement, and testified that he had signed it "so I could be left alone."

II
Plaintiff submitted an expert report prepared by John Brick, Ph.D., a biological psychologist. The report included a detailed description of Dr. Brick's qualifications and experience.[2] Dr. Brick gave the following summary of his findings and conclusions:
Based upon more than twenty-five years knowledge, training and experience in the field of alcohol studies, and the facts in this case, it is my opinion that Robert Isom was served and consumed a large quantity of alcohol. As a result of his consumption, he became intoxicated and impaired. In Robert Isom's state of intoxication, his ability to make good decisions regarding drinking was most likely impaired as was his ability to drive safely.
Given the evidence reviewed and Mr. Isom's level of intoxication, it is probable that he was in the range at which reliable signs and symptoms of visibly intoxicated [sic] were present while he was a patron at Nipper's Pub. If any alcohol was served to Mr. Isom after about 1:40 to 1:50 a.m., he was probably visibly intoxicated, the bartenders at this establishment were remiss in their responsibilities to their patron and placed him and others at [a] known increased risk for fatal injury. Such an action is also a violation of the law. Under the most conservative analysis, Mr. Isom was visibly intoxicated at all points after 2:25 a.m. and should not have been served any alcohol. Although the distance from the bar to the crash scene is not reported, it is noted that the crash occurred at 2:52 a.m.
In this case, given the nature of this crash, namely, decreased inhibitions, increased risk taking, inability to control his vehicle, maintain lane position and respond appropriately to roadway conditions, it is also my opinion that alcohol intoxication was a significant contributing factor to, if not the primary cause of this accident.
In addressing the expert's report, the motion judge acknowledged that the analysis and opinions expressed therein were probative of whether Isom was visibly intoxicated at the time he was served alcohol.
[Dr. Brick] takes Mr. Isom's weight, he takes references to the fact that there was drinking, he takes references to ingestion of food, various other things that go into the factoring. And he extrapolates that 5:30 reading back to a time earlier. And he says that from a period of 1:40 to 2:20, sometime, he would have had a reading of somewhere between .14 and .20. He averages that out. And thenthat's his extrapolation testimony.
And then he makes the second significant opinion, which is that if you are at a reading of that caliber you are going to exhibit signs of being visibly intoxicated. And he says that frombasically, I think, from what the general person in the populace would exhibit.
*60 Notwithstanding these findings, the judge declined to rule in plaintiff's favor. Thereafter, the court decided, sua sponte, to conduct an N.J.R.E. 104 hearing, in which plaintiff would have the burden to prove that the methodology used by the expert was generally accepted by the scientific community and otherwise admissible in a court of law. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94, 113 S.Ct. 2786, 2796-97, 125 L.Ed.2d 469, 482-83 (1993); Frye v. United States, 293 F. 1013, 1014 (D.C.Cir. 1923).
It is noteworthy that defense counsel did not request such a hearing, or move to bar the testimony of plaintiff's expert on such grounds. Indeed, defense counsel noted that he had encountered Dr. Brick on similar cases he has handled in this State. As the following passage illustrates, defense counsel's objections here were grounded only on the lack of corroborative evidence from an eyewitness.
Dr. Brick has been permitted to testifyhe has been permitted to testify. I am not representing he has not. It's the weight of the evidence as to Doctor Brick.
However, the piece that has always been present is there is always something corroborating Doctor Brick. There is always someone who says not only did I see him served while [visibly] intoxicated, but then we bring in Doctor Brick who says, of course, of course they would have seen him [visibly] intoxicated. Because relating back, again, this relation-back testimony, he would have been visibly intoxicated.
We are mindful that a trial judge has great discretion in the manner he or she manages a case. State v. Cusumano, 369 N.J.Super. 305, 311, 848 A.2d 869 (App.Div.), certif. denied, 181 N.J. 546, 859 A.2d 691 (2004); New Jersey Div. of Youth & Family Servs. v. J.Y., 352 N.J.Super. 245, 264, 800 A.2d 132 (App.Div.2002); see N.J.R.E. 611. We are equally aware that a judge has the authority to request additional briefing on issues of law that have not been adequately covered by the parties.
What we find troubling here, however, is the judge's decision to introduce, sua sponte in the midst of deciding a summary judgment motion, a potentially dispositive issue that imposes a legal burden only upon one party in the litigation. It bears emphasis that defense counsel specifically acknowledged that Dr. Brick's testimony had been admitted in other cases to corroborate an eyewitness's account. The methodology used by Dr. Brick to arrive at his conclusions was not part of defense counsel's argument. In this light, the court's actions were unwarranted.
We are also satisfied that the court mistakenly exercised its discretion in dismissing plaintiff's case with prejudice as a sanction for her failure to produce the expert witness at the N.J.R.E. 104 hearing. It is well-settled that the sanction of dismissal with prejudice for a procedural violation must be a recourse of last resort. Tucci v. Tropicana Casino & Resort, Inc., 364 N.J.Super. 48, 52, 834 A.2d 448 (App. Div.2003).
Here, the court scheduled the N.J.R.E. 104 hearings three separate times. At plaintiff's counsel's request, the court adjourned the proceedings twice. When the expert was unable to appear at the third scheduled hearing date, the court denied counsel's request for a fourth adjournment, and dismissed plaintiff's cause of action with prejudice. In reaching this decision, the court did not first explore the availability of lesser sanctions under Rule 4:23-1, including, upon application, awarding attorney's fees to defense counsel, or *61 imposing monetary sanctions under Rule 1:2-4.
The trial court's failure to first employ lesser sanctions converted what would otherwise be a well-accepted tool of judicial management into a needlessly punitive act, denying plaintiff her right to have the case decided on the merits. As we emphasized in Tucci, rules of procedure "were not designed to do away with substantial justice on the merits." Id. at 53, 834 A.2d 448.

III.
We next consider the issue of Smogey's testimony, the only eyewitness produced by plaintiff. Defendant filed its second motion for summary judgment immediately following Smogey's deposition. In response to the motion, plaintiff submitted sections of the transcript of Smogey's deposition testimony in which he reaffirmed that defendant's employees continued to serve Isom alcoholic drinks while he was visibly intoxicated.
Addressing first the inconsistencies in Smogey's testimony, the motion judge made the following findings:
THE COURT: Let me make a couple of findings. First, the first question is whether there are any individuals that are presented, that can testify that Mr. Isom was visibly intoxicated at a time when somebody can also testify that he was served a drink.
The only individual that has been asserted in that regard, that came close to that, would be Mr. Smogey. He signed an affidavit saying that. And on page 6 of his deposition and answer to plaintiff's counsel's question, he said, yes, I saw him [visibly] intoxicated when he was served a drink.
* * * *
It's this question: To your recollection, were they served alcohol . . . during this time when they were visibly intoxicated? The answer is yes.
Then the deposition was handed over to defense counsel. Defense counsel goes through a series of questions and clarifies what Mr. Smogey means by that.
* * * *
And Mr. Smogey saying, clearly, eventually, that the first that I can say definitively that I saw him visibly intoxicated was as we were leaving the bar. Which Mr. Smogey made clear was after the time that he saw Mr. Isom take or order and be served his last drink.
* * * *
Furthermore, he [Smogey] indicated why he signed the affidavit, where he said that he did see Mr. Isom visibly intoxicated when served. And he says, I just wanted to getI'm paraphrasing I wanted to get plaintiff's counsel or firm off my back and get it done with. And so he gave a motive for why he did what he [] did. He clearly refuted his testimony, finally saying that affidavit is just wrong.
And, finally, in my mind, and I think a finding that in the end his testimony is that he did not see Mr. Isom visibly intoxicated until after the last drink was served.
* * * *
And, therefore, we don't have anybody that can say I was there and I can tell you that Mr. Isom was visibly intoxicated, give us the facts on which that's based, and then say that he was served by the defendant.

*62 So based on that I'm satisfied that there is no observation by anybody from whom we have testimony that can demonstrate that Mr. Isom was visibly intoxicated.
[(Emphasis added).]
When reviewing the lower court's grant of summary judgment on appeal, this court uses the same standards as the court below and decides first whether there was a genuine issue of material fact, and if not, it then decides whether the lower court's ruling on the law was correct. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
Under Rule 4:46-2, summary judgment should only be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29, 666 A.2d 146 (1995).
It is the role of the trial judge to decide whether the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540, 666 A.2d 146. In the context of a summary judgment motion, the judge does not weigh the evidence, or resolve credibility disputes. These functions are uniquely and exclusively performed by a jury. Parks v. Rogers, 176 N.J. 491, 502, 825 A.2d 1128 (2003); Brill, supra, 142 N.J. at 540, 666 A.2d 146.
Here, there is no question that in the process of reviewing Smogey's deposition testimony, the motion judge made a credibility finding, choosing to disregard or give less weight to testimony favoring plaintiff's case. The judge simply accepted as fact that Smogey's recantation was more believable than his earlier statements expressed both at the deposition, and in affidavit form. By so doing, the motion judge improperly abrogated the jury's exclusive role as the factfinder. A jury has the power to accept or reject, in whole or in part, a witness's testimony, especially in cases like this one, where the witness ascribes a particular motive or offers an explanation for recanting statements previously given under oath. State v. Scelfo, 58 N.J.Super. 472, 478, 156 A.2d 714 (App.Div.1959), certif. denied, 31 N.J. 555, 158 A.2d 454 (1960).

IV
Plaintiff's dram shop cause of action was created by the Legislature. N.J.S.A. 2A:22A-5 provides that:
a. A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server only if:
(1) The server is deemed negligent pursuant to subsection b. of this section; and
(2) The injury or damage was proximately caused by the negligent service of alcoholic beverages; and
(3) The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.
b. A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server *63 knew, or reasonably should have known, that the person served was a minor.
In Salemke v. Sarvetnick, 352 N.J.Super. 319, 327, 800 A.2d 177 (App.Div.2002), we affirmed the judgment of the trial court that excluded expert testimony similar to that offered by plaintiff here through Dr. Brick. Notably, however, we based our decision on two factors: (1) the lack of testimony that the driver was served when she was visibly intoxicated; and (2) the expert's opinion which confirmed that the driver had not reached the stage of visible intoxication until after the last beverages were served. Id. at 326, 800 A.2d 177.
By contrast here, the issue of what Smogey actually witnessed remains a jury question. If the jury accepts the version of Smogey's testimony that is favorable to plaintiff, it can then use Dr. Brick's opinion to corroborate and support its verdict in plaintiff's favor; if the jury believes Smogey's recantation, it could decide the matter in defendant's favor. In this light, we need not, and specifically do not need to address whether a dram shop cause of action can, as a matter of law, be maintained without an eyewitness who can testify that plaintiff was served alcohol while visibly intoxicated.

V
The judgment of the trial court dismissing plaintiff's dram shop cause of action is reversed. The matter is remanded for trial.
Reversed and remanded.
NOTES
[1] Defendant's third-party complaint against the driver of the car was dismissed by the court, with the proviso that the driver's negligence would be left for the jury to decide, as a question of apportionment between tortfeasors.
[2] By way of summary, Dr. Brick indicated that he had a doctorate in biological psychology, including a minor in neuroscience behavior, and a Masters Degree in psychology, both from the State University of New York, at Binghamton; he also received continuing education training in psychopharmacology at Harvard Medical School. He has published professional articles in over ninety publications; has served in a variety of consultant and staff positions in the field of intoxication, including consulting positions with the New Jersey State Attorney General, and six different county prosecutors.