**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1971-19

ANTHONY FOTI and
CRISTINA FOTI, his wife,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

JG ELIZABETH II, LLC[1]
D/B/A THE MILLS AT JERSEY
GARDEN MALL I/S/H AS
SIMON PROPERTY GROUP, INC.,
and N.J. METROMALL URBAN
RENEWAL, INC. I/S/H AS
ELIZABETH METROMALL, LLC,

      Defendants-Respondents/
      Cross-Appellants.

and

WE ARE ONE UNITED, improperly
pled as WE ARE ONE UNITED
and NJ STATE AFL-CIO
COMMUNITY SERVICES
AGENCY, INC., UNION

---

[1] We added JG Elizabeth II, LLC to the caption as it was omitted from the caption of the complaint plaintiffs filed in the Law Division.

COUNTY COLLEGE and
COUNTY OF UNION,

     Defendants,

and

CITY OF ELIZABETH,

     Defendant-Respondent.

_____

Argued May 3, 2021 – Decided July 2, 2021

Before Judges Messano, Hoffman and Smith

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3213-17.

Yelena Kofman DelGado argued the cause for appellants/cross-respondents (Vlasac & Shmaruk, LLC, attorneys; John M. Vlasac, Jr., of counsel and on the briefs; Ryan P. Getz, on the brief).

Andrew L. Stern argued the cause for respondent/cross-appellant (Weiner Law Group, attorneys; Donald M. Garson and Ann Marie F. Kane, on the brief).

Robert F. Varady argued the cause for respondent (LaCorte, Bundy, Varady & Kinsella, attorneys; Robert F. Varady, of counsel and on the brief).

PER CURIAM

Plaintiff Anthony Foti was employed by the County of Union (the County) as an electrician.[2] The County sent plaintiff and fellow employee Steven Faethe to the Mills at Jersey Garden, a retail mall in Elizabeth owned by JG Elizabeth II, LLC, d/b/a The Mills at Jersey Garden Mall i/s/h as Simon Property Group, Inc., and N.J. Metromall Urban Renewal, Inc., i/s/h as Elizabeth Metromall, LLC (JG). In 2000, the City of Elizabeth (Elizabeth) leased space at the mall pursuant to a written lease (the Lease) with the Glimcher Group (Glimcher), developer of the mall. Elizabeth operated a job training center — the Retail Skills Center — in the leased premises, designated as Space 1158. Elizabeth paid no rent for the space. JG acquired the mall from Glimcher in 2015.

Although there were no written agreements, it is undisputed that with Elizabeth's acquiescence, the County agreed to join with a non-profit organization, We Are One New Jersey (We Are One), and the AFL-CIO to provide services to "legal[] permanent residents" within Space 1158. The County issued a work order to install electrical services for new cubicles in the space, but it never submitted any specifications or plans for the work to JG, and

_____

[2] Because plaintiff Cristina Foti's per quod claim is wholly derivative of her husband's claim, we use the singular "plaintiff" throughout the opinion.

JG's representatives were unaware that plaintiff and his colleague would be working in Space 1158.

On August 27, 2015, the County's Director of Facilities Management visited the space with plaintiff and discussed the work to be performed. The next day, plaintiff and Faethe arrived in Space 1158. Plaintiff ascended a ladder and, in the process of pushing electrical wire over ductwork in the space above the ceiling tiles, he received an electric shock from an exposed wire in an open junction box. Plaintiff fell from the ladder and was injured.

Plaintiff filed a complaint alleging negligence on the part of Elizabeth and JG.[3] After extensive discovery, both defendants moved for summary judgment. In an oral decision, the judge concluded plaintiff failed to demonstrate that either defendant created the dangerous condition or had actual or constructive notice of its existence. He entered two orders granting the motions and dismissing plaintiff's complaint.

Before us, plaintiff contends the judge abused his discretion by entering interlocutory orders barring his expert's second report as untimely and denying plaintiff's motion for reconsideration. Plaintiff argues that even without the

---

[3] All other defendants were dismissed from the litigation in the Law Division and have not participated in this appeal.

second report he established a prima facie case of negligence against Elizabeth under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. He further contends that it was error to grant JG summary judgment because plaintiff established that JG breached the duty owed to him as a business invitee by failing to make reasonable inspection and discovering the dangerous electrical condition above the ceiling.

Elizabeth and JG oppose all these arguments. Additionally, JG cross-appeals, contending that summary judgment was appropriately granted on two additional grounds which the Law Division judge did not address. Specifically, JG argues plaintiff was a "licensee," and it only owed him a duty to warn of dangerous conditions of which it had actual knowledge. JG also argues that plaintiff's injuries were caused by a condition incidental to the work he was performing.

We have considered these arguments in light of the record and applicable legal standards. We affirm on the appeal and dismiss the cross-appeal as moot.

I.

We first consider the interlocutory orders that resulted in the exclusion of plaintiff's supplemental expert report, mindful that "[a]n appellate court applies 'an abuse of discretion standard to decisions made by [the] trial courts relating

5

to matters of discovery.'" C.A. by Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "It 'generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (first alteration in original) (quoting Pomerantz Paper Corp., 207 N.J. at 371).

Similarly, "[w]e review the denial of a motion for reconsideration to determine whether the trial court abused its discretion." Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (citing Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)).

> [R]econsideration should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence . . . ."
>
> [Ibid. (alterations in original) (quoting Cummings, 295 N.J. Super. at 384).]

"[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

6

In September 2018, the judge managing the litigation entered an order requiring plaintiff to serve his initial liability expert's report by a certain date, and his final experts' reports by December 3, 2018; the order also extended discovery to January 29, 2019. In October 2018, plaintiff served the expert report of John Laiosa, an electrical contractor. Laiosa opined that "a dangerous condition existed in the ceiling of Space 1158, namely an open, uncovered junction box containing live wires with no wire nuts covering the open ends of the unused wires."

After more than 550 days of discovery and after the date his final experts' reports were due, plaintiff moved to compel the deposition of Elizabeth's witnesses and extend discovery. A second judge assumed management of the case, granted the motion, and extended discovery until April 29, 2019. Plaintiff deposed Elizabeth's witnesses on February 22, 2019. On the last day of discovery, plaintiff served a second report from Laiosa dated April 26 as an amendment to interrogatory answers.

In addition to the opinion reached in his earlier report, Laiosa said "the most likely cause for this dangerous condition was the . . . prior work left in an uncompleted state. . . . [T]his work was not completed in the proper manner,

A-1971-19

leaving an open junction box and exposed, uncapped wires above the ceiling of Space 1158." There was little else added to the initial report.

The judge heard argument on JG's motion to bar Laiosa's second report. In an oral decision, the judge granted the motion, noting that plaintiff failed to serve the report within twenty days of the discovery end date as required by Rule 4:17-7. The judge further concluded that plaintiff had not advised opposing counsel a second report was forthcoming, nor did plaintiff seek a further extension of discovery. In summary, the judge said: "[H]ow it's unfolded I don't think is fair[,] and it has to be met with the sanction of this order[,] which is[,] that report is going to be barred."

Plaintiff sought reconsideration. Essentially, he argued defendants were on notice from the September 2018 case management order and Laiosa's initial report that it would be supplemented as discovery progressed. Plaintiff cited defendants' alleged dilatory discovery responses. Plaintiff claimed exclusion of Laiosa's second report would be "fatal to [his] case," and he urged the court to reconsider its earlier order. The judge's oral decision reflected his conclusion that plaintiff had presented nothing new; he denied the reconsideration motion.

Before us, plaintiff contends he served the second expert report before the close of discovery, and, that the prejudice its exclusion wrought on plaintiff

outweighed any prejudice visited on defendants. Plaintiff also argues that the judge's denial of his reconsideration motion reflected a misunderstanding of the governing Court Rules. We find no merit to either argument.

Plaintiff clearly failed to comply with Rule 4:17-7, which prohibits a party from amending interrogatory answers within twenty days of the discovery end date unless the party "certifies . . . that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date." Plaintiff relies on Rule 4:17-4(e), which provides an exception to Rule 4:17-7. It permits a party to compel an expert's report by a court-ordered date certain and allows the proponent of the expert's report to rely upon the court's order. See Fanfarillo v. E. End Motor Co., 172 N.J. Super. 309, 313 (App. Div. 1980) (reversing order barring defense expert from testifying for failure to serve report because trial was set prior to date court ordered the defendant to furnish the report under Rule 4:17-4(e)).

However, Rule 4:17-4(e) has no application here. The only court order that set a date for plaintiff's final liability expert's report was the September 2018 case management order; that date was December 3, 2018, and plaintiff failed to meet that date.

Although plaintiff moved for a discovery extension to depose certain witnesses, vague assertions of dilatory discovery by defendants fail to overcome the fact that plaintiff never sought a further extension of discovery. See R. 4:24-1(c) (requiring motions to extend discovery to be made prior to the conclusion of discovery). Moreover, an arbitration date had been set, and plaintiff was required to establish "exceptional circumstances" justifying a further extension. Ibid.

It is difficult to see how any information supplied by the depositions that took place during the last discovery extension was critical to Laiosa's ultimate opinion, i.e., that "prior work" left the wiring in the junction box in a dangerous condition, accidently accessible to a tradesman like plaintiff. Even with the benefit of this additional discovery, Laiosa never said which party performed the "prior work," nor, as we discuss below, was plaintiff ever able to establish that fact.

Plaintiff's reliance on Tucci v. Tropicana Casino & Resort, Inc., 364 N.J. Super. 48 (App. Div. 2003), is misplaced. We need not review the facts surrounding our decision there to reverse the order barring an expert's report except to add that critical to our determination was the plaintiffs' counsel's certification attesting he was preoccupied at the time because his mother was

fatally ill. Id. at 51. That was "good cause, if not extraordinary circumstances, mandating a reasonable modicum of judicial indulgence." Id. at 54.

Here, plaintiff did not move to compel the deposition of Elizabeth's witnesses until after his final expert report was due under the September 2018 case management order. Plaintiff secured an extension of discovery after successfully moving to compel depositions and had ample time to move for a further extension of discovery if those depositions were truly necessary for Laiosa's supplemental report. Nothing in the record indicates there were personal problems that delayed the furnishing of the report.

In short, we find no mistaken exercise of discretion in barring Laiosa's second report. Plaintiff's arguments regarding the denial of his motion for reconsideration lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

II.

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

11

[Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). "'If there is no genuine issue of material fact,' then we must 'decide whether the trial court correctly interpreted the law.'" Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (quoting DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013), aff'd as mod., ___ N.J. ___ (2021)).

Additionally, "[w]e review the judge's interpretation of 'the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute.'" Warren v. Muenzen, 448 N.J. Super. 52, 62 (App. Div. 2016) (second alteration in original) (quoting Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)). We limit our review to the record before the motion judge. See Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000) (holding appellate review of the grant of summary judgment is limited to the record that existed before the

motion judge (citing <u>Bilotti v. Accurate Forming Corp.</u>, 39 N.J. 184, 188 (1963))).

A.

In addition to what we have already set forth, the motion record revealed that Elizabeth first entered into the Lease with Glimcher in 2000. The Lease forbade Elizabeth from making "any changes to the . . . electrical . . . systems without the prior written approval of [the l]andlord." Elizabeth was obligated to maintain the "electrical systems . . . exclusively serving the [l]eased [p]remises . . . walls, floors and ceilings." Pursuant to section 1.01(b) of the Lease, JG retained an easement above the finished ceiling of Space 1158:

> The exterior walls, roof and the area beneath the Leased Premises are not demised hereunder and the use thereof together with the right to install, maintain, use, repair, and replace pipes, ducts, conduits, wires, lines, flues, drains, access panels, sprinkler mains and valves, refrigerant lines, tunnels, sewers and structural elements leading through the Leased premises in locations which will not materially interfere with Tenant's use thereof and serving other parts of the regional development are hereby reserved unto Landlord. Landlord reserves an easement above Tenant's finished ceiling or light line to the roof, or to the bottom of the floor deck above the Leased Premises, for general access purposes and in connection with the exercise of Landlord's other rights under this Lease.

Glimcher and Elizabeth executed amendments and renewals to the Lease thereafter with the last extension terminating on October 31, 2016.

At the inception of the Lease, Union County College provided training at the Retail Skills Center for individuals to obtain employment at the mall. The County's Deputy Manager, William Reyes, Jr., who at the inception of the Lease was employed by Elizabeth, testified at deposition that the County decided to partner with We Are One and the AFL-CIO to help "documented individuals obtain their citizenship." These organizations were going to use some space in Space 1158, which Reyes acknowledged would be "cut out of existing space."

In February 2015, Reyes sent the general manager of the mall, Denise Palazzo, a letter advising that "[w]orking with . . . Elizabeth, Union County College, and We Are One," the County wanted a five-year extension of the Lease, set to expire in October 2016, which "would allow [it] the opportunity to invest in the physical space." Reyes said there were no agreements in place prior to plaintiff's accident regarding the sharing of space, and he had no idea how all these organizations were operating in Space 1158.

Palazzo acknowledged receiving the letter but could not recall ever responding. Nonetheless, Reyes arranged through the County's Director of Public Works to make improvements in Space 1158 to accommodate We Are

14

One and the union's occupancy; as noted, no plans were submitted to JG for approval prior to plaintiff commencing work. In August 2017, the County executed a lease for Space 1158 with JG. The commencement date in the lease was November 1, 2016.

On the day in question, plaintiff and Faethe were to install two electrical receptacles and tie them into junction boxes above the drop ceiling. They did not turn off the electricity at the main electrical panel. Faethe ran the wire to the first junction box on one side of the space; plaintiff climbed the ladder to do the second on the other side of the room. As he did so, plaintiff testified the wire he snaked through to make the connection must have contacted a "live" wire inside a junction box obscured by ductwork in the ceiling.

Faethe broke plaintiff's fall from the ladder. Faethe then mounted the ladder and, with the aid of his flashlight, saw the uncapped wire in the uncovered junction box. Faethe donned rubber gloves and capped the wires, but the men did not have the necessary sized cover to put on the junction box.

### B.

On this record, plaintiff contends he established a prima facie case of negligence against Elizabeth under the TCA because the exposed wire in the

uncapped junction box was a dangerous condition on public property, and plaintiff satisfied all provisions of N.J.S.A. 59:4-2. We disagree.

The "guiding principle" of the TCA is "that immunity from tort liability is the general rule and liability is the exception." Polzo v. Cnty. of Essex, 196 N.J. 569, 578 (2008) (Polzo I) (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)). "[A] public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex (Polzo II), 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)).

A public entity may be "liable for injury caused by a condition of its property" if a plaintiff can establish all the elements of N.J.S.A. 59:4-2.

> [I]n order to impose liability on a public entity pursuant to [N.J.S.A. 59:4-2], a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."
>
> [Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2); accord Polzo I, 196 N.J. at 579.]

"Th[e]se requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." Polzo I, 196 N.J. at 585.

"The [TCA] defines a 'dangerous condition' as 'a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" Garrison v. Twp. of Middletown, 154 N.J. 282, 286–87 (1998) (quoting N.J.S.A. 59:4-1(a)). "The first consideration is whether the property poses a danger to the general public when used in the normal, foreseeable manner." Vincitore, 169 N.J. at 126. Plaintiff contends he satisfied this prerequisite because it was foreseeable that work would have to be done in the space above the drop ceiling. While that may be true, we doubt access by a skilled tradesman to an area invisible and inaccessible to the general public meets this requirement.

But assuming arguendo plaintiff established a dangerous condition on public property, he failed to demonstrate Elizabeth had actual or constructive notice of the condition. There was no proof of actual notice. Nor was there any evidence that Elizabeth or its agents or employees created the dangerous condition. See N.J.S.A. 59:4-2(a). Even if Laiosa's second report was admitted,

it failed to demonstrate Elizabeth's employees or agents had left the live wire uncapped in an uncovered junction box.

Plaintiff argues that Elizabeth had constructive notice of the dangerous condition.

> A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> [N.J.S.A. 59:4-3(b).]

Initially, we note that "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Polzo I, 196 N.J. at 581 (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). Plaintiff argues, however, that because the dangerous wiring may have existed since Elizabeth first entered into the Lease, and because the Lease required Elizabeth to maintain the electrical services to Space 1158, it was on constructive notice of the dangerous condition on its property.

Of course, those cases where a plaintiff established constructive notice based on the passage of time usually involved openly visible conditions on public property, not a condition in a crawl space hidden by ceiling tiles. See,

e.g., Chatman v. Hall, 128 N.J. 394, 399–400 (1992) (large hole in public street that existed for many months prior to the plaintiff's accident); Lodato v. Evesham Twp., 388 N.J. Super. 501, 511–12 (App. Div. 2006) ("open and obvious" tree roots and raised sidewalk, along with similar conditions on sidewalks of two adjacent homes presented jury question constructive notice). In addition, plaintiff cites no authority for the proposition that the Lease provisions that required Elizabeth to maintain the electrical service to the space establish constructive notice. After all, Elizabeth was not doing the work inside the space, nor was the condition in the space above the ceiling tiles "of such an obvious nature" that had the city been doing the work it would have discovered the condition. Plaintiff, a skilled electrician, never saw the exposed wire before the incident.

We need not address other arguments raised by the parties regarding additional provisions of N.J.S.A. 59:4-2. Summary judgment was properly granted to Elizabeth because plaintiff failed to establish the prerequisite of actual or constructive notice for liability to attach under the TCA.

C.

Although JG argued that plaintiff was not its business invitee, the motion judge reasoned plaintiff was "there to fix the property. He's there to help the

tenant which helps [JG] continue to operate." However, without definitively deciding whether plaintiff was a licensee or a business invitee, the judge held that "[r]egardless . . . a property owner has a general tort obligation to avoid foreseeable harms to others." He granted JG summary judgment because plaintiff could not prove JG had notice of the alleged dangerous condition and therefore breached no duty to plaintiff.

Before us, plaintiff contends it established a prima facie case of negligence because as an invitee, JG as the landlord owed him a duty to make the premises safe, which included a duty to make reasonable inspection to discover defective conditions otherwise not obvious to its tenant. Plaintiff argues JG breached this duty because they failed to inspect the space above the ceiling tiles, and, had they done so, they would have discovered the dangerous wiring. We are unpersuaded.

These "common law categories" — invitee or licensee — "are a shorthand" that informs the analysis for the duty owed by the landowner. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 45 (2012). "The invitee comes by invitation, express or implied, generally for some business purpose of the owner. The licensee is permitted to come upon the property, and does so for his own purposes." Id. at 43 (first citing Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct.

1946); and then citing Prosser and Keeton on Torts § 60, at 412 (5th ed. 1984)). It is difficult to see how plaintiff could be characterized as an invitee of JB. Any electrical work he intended to perform was not for JG's business purposes. JG did not even know he was there and never approved the work. Moreover, plaintiff was performing the work for his employer, the County, not JG's tenant, Elizabeth.

Assuming arguendo plaintiff was a business invitee, JG owed him a greater duty of care than that owed to a licensee. See id. at 44 (noting a landowner "does not have a duty actually to discover latent defects when dealing with licensees." (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993))).

> Only to the invitee or business guest does a landowner owe a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions.
>
> [Ibid. (quoting Hopkins, 132 N.J. at 434).]

It is undisputed that the space above the ceiling tiles was part of the demised premises. Plaintiff contends that pursuant to the Lease, JG retained an easement to that space specifically to make improvements and repairs to the

21

electrical system as necessary. Plaintiff contends the retention of this easement imposed a duty on JG to make periodic inspections of the space, and its failure to do so breached the duty it owed to plaintiff as invitee.

However, "plaintiff['s] thesis that a commercial landlord should be held responsible to a tenant's employee injured on the leased premises because it reserved the right to enter the leased premises to perform repairs is inconsistent with the law of this State." McBride v. Port Auth. of N.Y. & N.J., 295 N.J. Super. 521, 525 (App. Div. 1996) (citations omitted); accord Shields v. Ramslee Motors, 240 N.J. 479, 489 (2020) (citing McBride and noting, "New Jersey courts have distinguished between the right to enter and a covenant to repair."). In short, the reservation of an easement in the Lease in favor of the landlord to make repairs and improvements did not establish JG owed a duty to its tenant, or plaintiff, to periodically inspect the space above the ceiling tiles.

Plaintiff also failed to establish that JG through its employees or agents created the dangerous condition. Laiosa's second report stated the obvious; the uncapped wires in the open junction box resulted from incomplete electrical work. Neither Laiosa nor any other witness testified when the "incomplete" work was done or by whom.

Affirmed. The cross-appeal is dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION